# ARRICK *v.* FRY.

PLEADING ; ALLEGATIONS AND PROOF ; PARTY WALLS; NEGLI-
    GENCE; ACTIONS PREMATURELY BROUGHT.

1. The allegations of a declaration and the proof adduced in support
    of them must conform to entitle the plaintiff to recover.

2. Whether in a suit against a property owner for his alleged negligent
    and unskillful removal of one party wall and construction of
    another, whereby plaintiff's property was injured, the plaintiff
    is entitled to recover damages under a covenant in defendant's
    permit to make good all damages sustained by plaintiff, or un-
    der his liability at common law, *quære.*

3. Where plaintiff's testimony in such a suit showed that at the time
    of the commencement of the suit, no damages to the plaintiff's
    premises were apparent, and none appeared for several months
    thereafter, it was *held* that the suit was prematurely brought.

No. 517.  Submitted February 3, 1896.  Decided March 2, 1896.

HEARING on an appeal by the plaintiff from a judgment
on a verdict directed by the court in an action to recover
damages for the negligent removal of one party wall and
construction of another.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. S. F. Phillips, Mr. F. D. McKenney, Mr. W. H. H.
Miller* and *Mr. Mills Dean* for the appellant.

*Mr. J. J. Darlington* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit at common law to recover damages for in-
juries to property alleged by the appellant, Lucy Young
Arrick, to have been sustained by her through the tearing
down of a party wall between her premises and those of
the appellee, Henry D. Fry, in the process of the recon-
struction of his own house by the appellee.

It appears that the appellant and appellee were the owners of two adjoining houses of a frame row on the east side of Fourteenth street, northwest, in the city of Washington, between L and M streets. The row comprised four houses, which had been built about the year 1868, of inferior lumber, as it is claimed, and with separating walls between them, designated as party walls, four inches in width, and constructed of wood, lathed and plastered. About the beginning of May, 1891, the appellee, who owned the most northern of the four houses, desired to tear it down and reconstruct it of brick ; and he procured the usual permission from the Inspector of Buildings for that purpose. It would seem that he procured permission at the same time to remove the partition wall of wood between his premises and those of his adjoining neighbor to the south of him, the appellant in this case, and to reconstruct it of brick. This was done under a provision of one of the building regulations in force at the time and yet in the District of Columbia, which is to the following effect :

" The Inspector of Buildings shall, upon application of any building owner or his authorized agent, examine any existing party or division wall, and if deemed by said inspector to be defective, out of repair, or otherwise unfit for the purpose of new buildings about to be erected, shall be made good, repaired, or taken down by the building owner, as the decision may be, the cost and expense of which repair or removal, together with the expense of the new wall or walls in lieu thereof, shall be borne and paid exclusively by him ; and he shall also make good all damages occasioned thereby to the adjoining owner or his premises."

Being informed of the purpose of the appellee, the appellant, whose grandmother and mother resided with her, and were aged or infirm, deemed it prudent to remove from her own house while her neighbor's work of reconstruction was in progress ; and she accordingly vacated her house on the 15th of May, 1891, when the work was about to be commenced, and she did not return to it until January 31,

1892, when the work, so far as it affected her, had been finished. It was not her intention to return at all, if she could have rented her property ; and she had placed upon it a placard to signify that it was for rent ; bnt she failed to rent it. Some delay in the matter of her return is claimed to have been occasioned by a controversy between the parties with regard to the placing of some iron caps on the chimneys of the appellant's premises, and also with regard to the location of a boiler in the appellant's kitchen, the temporary removal of which had been required by the reconstruction of the division wall. But neither this delay nor the exclusion of the appellant from her premises during the period of the continuance of the work seems to be made a ground of complaint in these proceedings.

The appellee tore down his house and the partition wall, and proceeded to reconstruct both. The appellant's building was shored up, as the expression is—that is, a temporary partition was constructed of the kind usual in such cases, with props and boards, which were covered with thick felt paper. After this the new partition wall was constructed ; the rooms in the plaintiff's house were re-papered ; such injuries as were then apparent were repaired ; and the appellant re-entered upon her property, apparently supposing that it was in good order and condition. But some time after she had resumed possession of it some defects began to appear. Some cracks appeared in the plastering ; the floors began to sag ; the doors closed with difficulty ; the transoms became oblique, and later some plastering fell. But all these defects seem to have been developed some time after the appellant had resumed possession of the property on January 31, 1892 ; for the appellant's testimony was to the effect that, when she so resumed possession, the appellee's workmen had " apparently made good all the damages occasioned by the removal of the partition ; that all the wood work, plastering and plumbing necessary to be done were done ; that all the rooms in the house adjoining the new wall were newly papered to the

satisfaction of the plaintiff at the defendant's expense;   *
*   *   that when she and her family did return to the
house (on January 31, 1892), everything seemed to be in
proper condition, and no damages were apparent; that the
plaintiff never gave the defendant notice of the develop-
ment of any defects in the work, or called upon him to
make good the same; that in February a damp spot ap-
peared in the wall of one room, which, however, disap-
peared and did not return ; that the plaintiff herself could
not say that any cracks appeared within a year after she
reoccupied the house, and no other witness testified to any
appearing earlier than two months after such reoccupancy."

This is the statement of the appellant's own testimony
from the record ; and yet, although, according to this state-
ment, " everything seemed to be in proper condition and no
damages were apparent " on January 31, 1892, and pre-
sumably, of course, none before that, she had taken the
precaution of instituting this suit on January 13, 1892. Upon
her own testimony, there was then at least no apparent
ground for it, and none for a long time afterwards, and the
suit would seem to be the result of superabundant caution
or prophetic foresight.

The appellant, as plaintiff, filed her declaration in the Su-
preme Court of the District of Columbia in three counts.
The first count alleged, in substance, that the appellee, the
defendant below, had so unskillfully, wrongfully, and im-
properly torn down his building and the adjoining party wall
forming part of plaintiff's building, without properly shoring
up plaintiff's building and duly securing it, as to injure the
plaintiff's building and to cause the floors to sink and get
out of plumb.   The second count was to the effect that the
defendant had so negligently pulled down his own house as to
cause the walls, floors, and ceilings of the plaintiff's house
to shake and crack, and to cause damage to the plaintiff's
furniture from dust, rubbish, and rain, in consequence of
which she lost the use of her house for seven months.   And
the third count was to the effect that the defendant had so

negligently removed the party wall as to damage the plaintiff's house, to throw the floors, ceiling, doors, and windows out of plumb, and to compel the plaintiff to leave her house for seven months.

To all these counts the defendant pleaded the general issue.

At the trial the facts above stated were shown. It was also testified on behalf of the plaintiff, that on two or more occasions, when it rained, the water came through the temporary partition or shoring, and wet the floor to some extent; but it did not appear that there was any damage done thereby; also, that there was no negligence or unskillfulness in the performance of the work in any other particular than an omission to leave in the permanent party wall an aperture or open space above each joist of an inch or more; also, that before the defendant commenced his improvements, the floors, transoms, and doors of the plaintiff's premises were entirely right, but after the work was done commenced to sag and slant, although the picture mouldings remained straight and parallel with the ceiling, and the new wall seemed to have settled only very little.

One witness for the plaintiff rather extravagantly estimated the damage to the property to amount to from $2,500 to $3,500, while stating that before the defendant's improvement it was not worth in all more than from $3,000 to $4,000. Another estimated the damages to amount to about $1,500. This latter witness, who seems to have had no knowledge of the property except by an examination of it during the trial in the court below, stated that the "sagging was manifestly greater than any settlement which had taken place in the new wall, and that from this it looked to him that in shoring up they had not taken care to shore up the old building." And this is all the testimony that tends to connect the defects in the house with alleged negligence in the shoring.

The plaintiff, while being examined as a witness on her own behalf, was asked by her counsel whether the water

pipes had been frozen before the improvement began, and also what trouble, if any, she had with the water pipes since the improvement; but both these questions were excluded, on the ground that there was no allegation in the declaration which could form a basis for them; and exception to this ruling was reserved on the part of the plaintiff. But this ruling is not assigned for error before us; and the exception, therefore, need not be considered.

There was testimony on the part of the defendant that the sagging complained of by the plaintiff could not have been the result of the work undertaken or done by the defendant; that most, if not all of it, was old, as shown by the dust in the apertures and crevices, and that all the defects complained of could be remedied for a sum not exceeding $100.

And this being the substance of all the evidence in the case, the court, upon the motion of the defendant, directed the jury to return their verdict for the latter, on the ground that, as the declaration was based upon alleged negligence and unskillfulness in the performance of the work, and not upon any statutory responsibility of the defendant under the building regulations as an insurer, and as there was no evidence to support the charge of negligence or unskillfulness, or to show that the defendant had failed to protect the house properly during the work, or that the plaintiff had lost the use of the premises through any of the causes stated in the declaration, the plaintiff was not entitled to recover. And the ruling was also placed upon the ground that, upon the evidence in the cause, the action, if any cause of action there existed, was prematurely brought.

To this ruling the plaintiff duly excepted, and verdict and judgment having been rendered against her, she has brought her cause to this court by appeal. The only error assigned here is the direction by the court to return a verdict for the defendant; and the only question for our determination is whether there was sufficient evidence under the pleadings in the cause to entitle the plaintiff to go to the jury.

The rule of law is imperative that a plaintiff's allegations and proofs must conform with each other. This is an elementary rule, founded on the plainest principles of justice. A defendant cited to court is entitled to be fully and fairly informed of the nature, character, and extent of the demand upon him; and it necessarily follows that, when he is cited to answer to one charge, proof is not admissible of another and different charge. It is well settled doctrine, as an exemplification of the rule, that in a suit for trespass or trespass on the case, when a cause of action is stated and special damages are set forth, no other cause of action and no other special damages can be allowed in evidence. It would be most unfair to the defendant, if it were otherwise; and no injustice is done to a plaintiff by the requirement of a reasonably strict and accurate statement of that which he proposes to prove, and which necessarily in most cases lies most in his own knowledge.

But these elementary propositions of law would seem to have been in great part ignored by the appellant in this case. The allegations of the plaintiff's declaration have no support in the evidence; while the declaration itself is a confused statement, full of verbiage, and signifying little. And the brief filed on this appeal on behalf of the appellant, although a most able and luminous argument on several questions of law supposed to be involved in the case, does not seem to us to touch the questions raised by the pleadings and proofs. For there is no question involved whether the defendant became a trespasser by taking down the partition wall between his property and that of the plaintiff; nor is it the question whether the plaintiff was in the possession of an easement which the defendant evaded and disturbed; nor is it the question whether the wall that was taken down was a party wall, which the defendant was precluded from controlling exclusively for his own benefit; nor is it the question whether the privilege conferred by the building regulations in force in the District of Columbia upon an owner of property to tear down and recon-

struct a party wall can be duly exercised only after inspection and condemnation of the wall by the inspector of buildings. All these questions have been discussed; but they are plainly excluded from consideration by the structure of the plaintiff's declaration, which recited a *prima facie* right on the part of the defendant to do what these several questions would imply was a trespass, and recited a duty imposed upon him in the performance of the work to do the work properly, and alleged as the violation of that duty and the plaintiff's cause of action the negligence and unskillfulness of the defendant and his employees in the construction of the work so undertaken to be performed by him. And we may add that, in our opinion, the declaration and proof do not sufficiently, if at all, raise the question of the defendant's liability as an insurer, either under the common law or under the permit authorized by the building regulations, to " make good all damage occasioned by the exercise thereof to the adjoining owner."

The declaration, as we have stated, contains much unnecessary verbiage ; but when it is fully analyzed, it shows four allegations of default on the part of the defendant: 1st. Negligence and unskillfulness in the removal of the partition wall, without properly shoring the plaintiff's building, whereby the floors of the latter sank and got out of plumb and the building was injured ; 2d. The improper and unskillful rebuilding and restoration of the party wall ; 3d. The negligence of the defendant in so tearing down his own premises and the party wall as to injure the plaintiff's furniture and carpets with dust, rubbish and rain ; 4th. The compulsory removal of the plaintiff from her house in consequence of the negligence and unskillfulness of the defendant in the removal of the party wall. The first two of these allegations are found in the first count of the declaration, and the other two in the second and third counts, respectively.

Now, the third of these allegations, which is the charge of the second count, is without any proof whatever of any

kind to support it. And as to the fourth, which is the gravamen of the third count, if the plaintiff has, as she might justly have had, a cause of action against the defendant on account of her removal from the premises, notwithstanding that her removal was apparently voluntary and in anticipation of the work and not in consequence of it, she herself shows conclusively that her removal and absence from the premises for the period of seven months, even if it is to be regarded as compulsory and entailing upon the defendant a liability for damages, was not in any manner, and could not have been, due to any negligence or unskillfulness on the part of the defendant in the removal of the party wall. The party wall was not disturbed in any manner until after her removal, and her absence had no connection whatever with any real or alleged negligence or unskillfulness in the removal of the party wall.

Both in the first and third counts of the declaration the allegation of default on the part of the defendant is the charge of negligence and unskillfulness in the removal of the party wall; and the charge of negligence and unskillfulness in the construction of the new party wall; and this two-fold charge of negligence and unskillfulness is the burden of the plaintiff's declaration. It is true that there is a recital also, "that it was the duty of the defendant * * * to make good all injuries occasioned to plaintiff's said building by said works of defendant," and an allegation that, " by the failure of the defendant to make good all injuries occasioned to said building," the plaintiff was damaged. But the only damage specifically alleged to have occurred was the sinking of the floors by which they got out of plumb; and at the trial the only proof of damage was the sagging of the floors, windows and doors, with some cracks in the plastering. This undoubtedly was damage enough to be referred to a jury and to entitle the plaintiff to just compensation for it, if there was any testimony to show that it was due to the negligence and unskillfulness of the defendant, as alleged in the declaration,

or if there was anything from which an inference to that effect could reasonably be drawn ; or if the pleadings and proofs showed such conditions as that, the liability of the defendant as an insurer to make good all damage must have arisen before the suit was brought.

But there is no proof of negligence in the shoring of the building. It is shown to have been done in the usual way, and with the usual precautions, and the fact is conceded. The rain came through the temporary boarding on two or three occasions ; but no damage is claimed to have accrued from that circumstance. The only testimony that seeks to connect the sagging of the floors, windows and doors in any manner with the shoring of the building, is that of one of the witnesses for the plaintiff, who scarcely proved himself to be an expert, and who knew nothing whatever of the building until the time of the trial of the suit, which was in March, 1895, considerably more than three years after the work had been done. The testimony of this witness, as stated in the record, was this :

" That he had examined the plaintiff's premises since the trial began and had noticed the sagging of the floors, doors, jambs, transoms, and the cracks in the walls ; that this sagging was manifestly greater than any settlement which had taken place in the new wall, and that from this it looked to him that in shoring up they had not taken care to shore up the old building ; and that, in his opinion, the defects noticed by him could not be removed and the house restored to the condition in which it was before they occurred for less than fifteen hundred dollars."

And this was all the testimony to show negligence or unskillfulness on the part of the defendant in the matter of shoring the building. We cannot think that it is sufficient to make a case to be submitted to a jury. It is, however, amply sufficient, in the absence of all testimony to the contrary, to show that the defects complained of by the plaintiff were not due to any negligence or unskillfulness in the construction of the new wall, and to overthrow the plain-

tiff's case with reference to any liability by the defendant in that regard. The only alleged defect shown in the construction of the new wall was, according to the testimony of another witness for the plaintiff, the omission to leave a vacant space of an inch or more above the joists. But neither he nor any one else pretends that this omission had anything to do with the defects complained of—the sagging of the floors, doors, jambs, and transoms, and the cracks in the plastering.

If these defects have not been magnified, and be not attributable, in whole or in part, to the age of the house, the mode of its construction, or the character of the materials out of which it was built, it may well be that, although the allegation of the defendant's negligence and unskillfulness failed to be sustained by proof, the plaintiff would be entitled to recover damages therefor from the defendant under the covenant of his permit from the Inspector of Buildings to make good all damages sustained by the plaintiff, or under his liability at common law, if there was such liability as claimed, which it is unnecessary here to determine. But apart from the question whether the declaration can be assumed to set forth any such liability, which may be seriously doubted, notwithstanding that in the case of *Fowler* v. *Saks,* 18 D. C. 570, the Supreme Court of the District of Columbia, in General Term, would seem to have held a declaration identical with that in the present case as sufficient to justify a recovery against the defendant as an insurer, we do not find that the testimony in this case sufficiently supports the declaration even in that construction of it. For when the plaintiff reoccupied her house on January 31, 1892, which was upwards of two weeks after this suit was instituted, every defect had been repaired that was apparent to the parties, and every damage had been made good of which either had any knowledge. And it is fully conceded by the plaintiff that, so far as could then be seen, the defendant had fully and fairly repaired all the damage done. And it must be remembered that his covenant un-

der the permit, and even his undertaking under the common law, was not that he would do no damage to the plaintiff's property, for temporary damage was the inevitable result of his operations, but that he would repair all damage that should be done.

There was, therefore, no apparent ground for this suit at the time when it was instituted or for upwards of two months at least afterwards, or perhaps even for twelve months ; for the testimony seems to vary as to the time when the defects began to become apparent. The defendant had repaired all damage so far as he knew it to exist or was informed of it to the entire satisfaction of the plaintiff. And if defects afterwards became apparent, whatever may have been the cause of them, it was not fair or just to the defendant to. seek to hold him liable therefor in a suit when, as it is conceded, no notice whatever had been given to him of the existence or appearance of such defects, and he could not well have known of them without such notice, and no demand had been made upon him to repair them. To such notice and demand he was entitled upon the plainest principles of justice and fair dealing, if he was to be held upon his liability as an insurer under the building regulations. Upon this theory of liability, therefore, the suit was prematurely brought ; and so we understand the court below also to have held.

In the record before us, there is no explanation of the fact that this suit was instituted on January 13, 1892, when eighteen days afterwards, on January 31, 1892, when the plaintiff returned to her house, there was no damage whatever apparent and consequently no apparent cause for suit. Either all apparent damage had been repaired through that intervening period and the plaintiff thereafter causelessly prosecuted the suit, or else the proceeding was instinct with prophecy. But, however, this may be, the proof fails to substantiate a case either of negligence and unskillfulness, which the declaration clearly charges, or of liability as insurer, which the declaration may be supposed or assumed to state.

We are of opinion that there was no error in the direction given by the court to the jury to return their verdict for the defendant ; and the judgment appealed from must therefore be *affirmed with costs ; and it is so ordered.*